IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTONIO A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:23-cv-00449-BT |
| | § | |
| MARTIN J. O'MALLEY, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant.[1] | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Antonio A.'s[2] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. (ECF No. 1). For the reasons explained below, the Commissioner's decision is REVERSED.

**Background**

Plaintiff alleges that he is disabled due to gout, back problems, obesity, vision loss, high blood pressure, high cholesterol, and headaches. Admin. R. 82,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018, Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

229 (ECF No. 10-1).[3] Plaintiff was born in 1981 and alleges an amended disability onset date of December 11, 2021. *Id.* at 31, 48. Plaintiff has at least a high school education. *Id.* at 31, 230.

On April 28, 2021, Plaintiff applied for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (the "Act"). *Id.* at 100. His claims were denied initially and upon reconsideration. *Id.* at 87, 98, 130-39, 141-46. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), who conducted an online video hearing on October 6, 2022.[4] *Id.* at 46-80.

On November 10, 2022, the ALJ issued a decision finding that Plaintiff has not been under a disability within the meaning of the Act from his alleged amended onset date through the date of the decision, and thus he is not entitled to DIB or SSI. *Id.* at 25, 32. As an initial matter, the ALJ found that Plaintiff met the insured status requirements under the Act though December 31, 2023. *Id.* at 26. Utilizing the five-step sequential evaluation,[5] the ALJ first found that Plaintiff had not

---

[3] Citations to the record refer to the CM/ECF page numbers at the top of each page rather than page numbers at the bottom of each filing.

[4] Because of the extraordinary circumstances presented by the COVID-19 pandemic, the ALJ conducted the hearing by video.

[5] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of

engaged in substantial gainful activity since December 11, 2021, his alleged amended onset date. *Id.* at 26. At the second step, the ALJ noted that Plaintiff experienced severe impairments of "ruptured quadriceps tendon s/p surgery; keratoconus; and obesity." *Id.* at 26. At the third step, the ALJ determined that Plaintiff's impairments did not meet or medically equal any listed impairment in appendix 1 of the social security regulations. *Id.* at 28-29.

> Before proceeding to step four, the ALJ found that Plaintiff has the RFC:
>
> to perform less than the full range of sedentary work . . . ; he has the ability to lift, carry, push, and/or pull 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk 2 hours of an 8-hour day, and sit 6 hours of an 8-hour day. Claimant can less than occasionally climb, balance, stoop, kneel, crouch, and crawl. Claimant can perform work occasionally requiring far visual acuity and/or visual accommodation. Claimant is able to avoid ordinary hazards. Claimant cannot work around moving mechanical parts or unprotected heights.

*Id.* at 29.

Next, the ALJ found that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferrable job skills." *Id.* at 31.

---

the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

Finally, relying on the testimony of a vocational expert, at step five, the ALJ determined that Plaintiff had the ability to perform the jobs of order clerk, document preparer, and table worker, and that such jobs existed in significant numbers in the national economy. *Id.* at 32-33.

Plaintiff appealed the ALJ's decision to the Appeals Council. *Id.* at 6. The Appeals Council found that the appeal did not provide a basis for modifying the ALJ's decision. *Id.* at 6-10. Plaintiff then filed this action in federal district court.

## Legal Standard

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance.").

The ALJ, and not the courts, resolves conflicts in the evidence; the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the Commissioner stated to support his decision. *Copeland*, 771 F.3d at 923. If the

4

Commissioner's findings are supported by substantial evidence, the findings are conclusive, and the Commissioner's decision must be affirmed. *Martinez*, 64 F.3d at 173. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [ALJ's] findings." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)), *adopted by* 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Id.* (quoting *Martin*, 748 F.2d at 1031). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.* (citation omitted).

## Analysis

The central issue presented is whether the ALJ's RFC determination was supported by substantial evidence. As his sole point of error, Plaintiff contends that the "ALJ's RFC determination is unsupported by substantial evidence because he constructed the RFC out of whole cloth." Pl.'s Brief 10 (ECF No. 16). Specifically, Plaintiff argues that "[b]ecause the ALJ had no medical opinions in the record that he found persuasive, and no opinions at all on Plaintiff's visual limitations from his

5

keratoconus, there is effectively no evidence from which the ALJ could build a logical bridge to determine Plaintiff's RFC." *Id.* Plaintiff further contends that "it was incumbent that the ALJ obtain a medical expert opinion on how Plaintiff's keratoconus impacts his ability to work [and] the ALJ was not permitted to insert his own guess at what Plaintiff's RFC visual limitations require." *Id.* at 14.

In response, the Commissioner contends that "substantial evidence of record supports [the ALJ's] decision" and the ALJ "applied proper legal standards in reaching this decision." Def.'s Br. 5 (ECF No. 18). The Commissioner also argues that "[w]hat Plaintiff characterizes as the ALJ's impermissible interpretation of raw medical data is actually the ALJ properly interpreting the medical evidence to determine Plaintiff's capacity for work." *Id.* at 4.

RFC is the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hill*, 2020 WL 6370168, at *6 (cleaned up) (quoting *Hollis v. Bowen*, 837 F. 2d 1378, 1386-87 (5th Cir. 1988) (per curiam)). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating

physicians or other acceptable medical sources. 20 C.F.R. at § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In making that assessment, the ALJ considers not only medical opinions but all of the relevant medical and other evidence. 20 C.F.R. §§ 404.1513(a), 416.945(a)(3). In this context, evidence is anything the claimant or anyone else submits or that the ALJ obtains relating to the claim. 20 C.F.R. §§ 404.1513(a), 416.913(a). The ALJ "has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue,* 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam).

After reviewing the hearing decision and the administrative record, the Court finds that the ALJ's RFC determination is not supported by substantial evidence.

Here, the ALJ determined Plaintiff to have the RFC to "perform less than the full range of sedentary work . . . [assessed ] as the ability to lift, carry, push, and/or pull 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk 2 hours of an 8-hour day, and sit 6 hours of an 8-hour day." Admin. R. 29. He further limited Plaintiff's RFC, determining he can "less than occasionally climb, balance, stoop, kneel, crouch, and crawl." *Id.* With respect to Plaintiff's medically determinable vision impairment, the ALJ limited Plaintiff to "work occasionally requiring far visual acuity and/or visual accommodation." *Id.* And, he found that

7

although Plaintiff "is able to avoid ordinary hazards[,] [he] cannot work around moving mechanical parts or unprotected heights." *Id.*

In explaining how he came to this determination, the ALJ points to Plaintiff's hearing testimony and objective medical evidence in the record. *Id.* at 29-31. He summarized the hearing testimony as follows:

> At the hearing, claimant testified that he cannot really drive because of his vision and his knee. He has double vision and his eyes blur. His knee is still not normal. It buckles and hurts and wakes him from his sleep. He does not use a brace or cane. He keeps his right eye closed most of the time. He is able to avoid hazards. He drives 5 to 10 times per week to take his roommate's kids to school and pick them up. He can sit 20 to 30 minutes. He can lift 50 to 70 pounds but cannot walk very far with it and would have to rest in between doing that. His leg just buckles when he is walking and has caused him to fall. He last fell about 2 months ago.

*Id.* at 30 (citing hearing testimony).

> With respect to his vision, the ALJ noted:
>
> Claimant saw optometrist, David Dinh, in May 2022, complaining of dirty contacts throughout the day causing him to take them out and clean them three times per day. He was also having problems with glare. At the conclusion of the appointment, Dr. Dinh noted that claimant's visual acuity with lenses was 20/20 in both eyes.

*Id.* at 31 (citing Exhibit 23F/5-6). He noted that Plaintiff "underwent a right corneal transplant in August 2022." *Id.* (citing Exhibit 26F/22-23). He also noted that "[a]dditional treatment was received in August and later." *Id.* at 29 (citing Exhibit 27F). He noted that Plaintiff "testified at the hearing that this was meant to slow the progression and his vision could possibly improve [and that] he still

drives 5 to 10 times per week, indicating that his vision is satisfactory to do so." *Id.* (citing Hearing Testimony).

The ALJ then concluded, "[a]fter careful review of the evidence," Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence" and other evidence in the record. *Id.* at 30.

Further, the ALJ determined that the state agency medical consultants' opinions[6]—that Plaintiff could perform work at the light exertional level with limitations in climbing, performing postural activities, and exposure to environmental conditions, and with no visual limitations—were "partially persuasive," noting that "evidence received at the hearing level supports more limitation." *Id.* at 31. On that basis, the ALJ determined that Plaintiff's RFC should also include additional postural limitations and limitations arising from Plaintiff's vision impairment.

Under the current regulations, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citation omitted).

---

[6] State agency medical consultants, on initial review and reconsideration, opined that Plaintiff could perform light work, with limitations in climbing, performing postural activities, and exposure to environmental conditions, and had no visual limitations. Admin. R. 94, 105, 114.

9

"There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion." *Nic R. v. Kijakazi,* 2023 WL 2529930, at *3 (N.D. Tex. Feb. 21, 2023) (citation omitted) (Rutherford, J.), *adopted by* 2023 WL 2531492 (N.D. Tex. Mar. 15, 2023). "Even the absence of medical opinions does not necessarily render a record inadequate to support an ALJ's RFC determination." *Id.* at *5 (citing *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995) and *Joseph-Jack v. Barnhart,* 80 F. App'x 317, 318 (5th Cir. 2003) (per curiam)). But "as a non-medical professional, the ALJ is not permitted to 'draw his own medical conclusions from some of the data, without relying on a medical expert's help.'" *Kenneth S. v. Saul,* 2019 WL 3881618, at *5 (N.D. Tex. July 31, 2019) (Horan, J.) (quoting *Frank v. Barnhart,* 326 F.3d 618, 621-22 (5th Cir. 2003)), *adopted by* 2019 WL 3859653 (N.D. Tex. Aug. 15, 2019). ALJs must resist the urge to "play[ ] doctor" and make independent assessments of raw medical data. *Id.* at *7 (citation omitted). This is because "[c]ommon sense can mislead" and "lay intuitions about medical phenomena are often wrong." *Frank,* 326 F.3d at 622 (citation omitted).

In *Ripley*, the Fifth Circuit observed that the record included "a vast amount of medical evidence establishing that [the claimant] ha[d] a problem with his back," but it did "not clearly establish" what effect that "condition had on his ability to work." 67 F.3d at 557. In addition to lacking "reports from qualified medical experts" regarding the claimant's ability to work, "[t]he only evidence regarding [the claimant's] ability to work came from [his] own testimony." *Id.* at 557. Thus, substantial evidence did not support the ALJ's RFC determination because the

10

court could not "determine the effects of [the claimant's] conditions, no matter how 'small,' on his ability to . . . work." *Id.* at 557 & n.27. Later discussing *Ripley*, the Fifth Circuit reaffirmed that "an ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam) (citation omitted). In *Williams*, the court held that "the ALJ impermissibly relied on his own medical opinions as to the limitations presented by" the claimant's conditions because there was "no evidence supporting the ALJ's finding that" she "could perform light work with [those] conditions." *Id.* at 831-32.

Instead, the ALJ should request a "medical source statement" describing types of work the claimant is still capable of performing despite his condition. *Ripley*, 67 F.3d at 557. Absent such a statement, there is typically insufficient evidence to support an RFC determination. *Id.* at 557-58 (remanding the case with instructions to obtain a report from a treating physician regarding effects of the plaintiff's condition on his ability to work).

In this case, the ALJ determined that visual limitations were warranted. But the record is devoid of any medical expert opinion on what those specific limitations should be. The ALJ crafted Plaintiff's RFC based on his own determination of what Plaintiff's visual impairment required. No treating, examining, or consultative source offered any opinion on the effect Plaintiff's keratoconus—a complicated eye condition—had on his ability to work. The ALJ

11

improperly relied on his own interpretation of the raw medical data and Plaintiff's testimony.

While the RFC is ultimately the ALJ's determination, under these circumstances, there is no foundational basis for the ALJ's RFC. An ALJ cannot look to only the claimant's "history of surgery, medical examinations, and complaints of pain," and conclude the claimant can perform sedentary work. *Ripley*, 67 F.3d at 557. In doing so, "the ALJ relied on evidence that merely describes Plaintiff's conditions, rather than demonstrating her ability to work despite those impairments." *Amy Y. v. Comm'r of Soc. Sec.*, 2023 WL 5209813, at *7 (N.D. Tex. July 25, 2023) (finding error where, in the absence of medical opinions and RFC assessments by state agency consultants, the ALJ made an RFC determination based on medical conclusions he drew from the raw data), *adopted by* 2023 WL 5216497 (N.D. Tex. Aug. 14, 2023); *see also Cary G. T. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (Toliver, J.) (concluding that although "the RFC is ultimately the ALJ's determination," the ALJ erred because there was no apparent "foundational basis for that decision" where "no treating, examining, or consultative resource reviewed the impact of [p]laintiff's conditions on his ability to work"); *Jim S. v. Saul*, 2019 WL 4694943, at *9 (N.D. Tex. Sept. 25, 2019) (Ramirez, J.) (finding error where, despite the voluminous progress reports, clinical notes, and lab reports in evidence, "none [made] any explicit or implied reference to the effects these conditions h[ad] on

claimant's ability to work" and the ALJ could not rely on that "raw medical evidence as substantial support for" the claimant's RFC).

Here, as in the cases cited directly above, there are no medical opinions in the record regarding the effects of Plaintiff's visual impairments on his ability to work. And as in those cases cited above, here, the Court can only conclude that the ALJ relied on his own interpretation of the medical and other evidence, which he may not do. *See Williams,* 355 F. App'x at 832 n.6. ("An ALJ may not–without the opinions from medical experts–derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions, [and] an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions.").

Because "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected," Plaintiff must show he was prejudiced by the ALJ's failure to rely on medical opinion evidence in assessing his RFC. *See Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). To establish prejudice, he must show that the ALJ's failure to rely on a medical opinion as to the effects that his visual impairments had on his ability to work casts doubt on the existence of substantial evidence supporting the disability determination. *See McNair v. Comm'r of Soc. Sec. Admin.,* 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in

support of the ALJ's decision.") (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

"Courts in the Northern District have found that the ALJ's failure to rely on a medical opinion concerning the claimant's RFC necessarily casts doubt on the disability determination." *Amy Y.*, 2023 WL 5209813, at *7 (collecting cases); *see also Cary G. T.*, 2022 WL 954341, at *4 (finding prejudice and remanding where the administrative record revealed no treating, examining, or consultative resource that reviewed the impact of Plaintiff's conditions on his ability to work, and ALJ assessed RFC based on his own lay interpretation of medical records and claimant's testimony); *Jim S.*, 2019 WL 4694943, at *10 (finding prejudice and remanding where there were no medical opinions in the record regarding the effects Plaintiff's mental impairments had on his ability to work, and the ALJ appeared to have relied on his own interpretation of the medical and other evidence); *Tyria R. v. Saul*, 2020 WL 10050779, at *13 (N.D. Tex. March 6, 2020) (Ramirez, J.) (finding prejudice and reversing and remanding for further proceedings for lack of substantial evidence because of the ALJ's failure to rely on a medical opinion in determining the plaintiff's RFC), *adopted by* 2020 WL 1434516 (Mar. 20, 2020); *Thornhill v. Colvin*, 2015 WL 232844, at *11 (N.D. Tex. Dec. 15, 2014) (finding prejudice and remanding "where the ALJ could have obtained evidence that might have changed the result—specifically, a medical source statement").

14

As in these cases, the Court concludes that the ALJ's error was not harmless and remand is required on this issue.

## Conclusion and Order

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS the case to the Commissioner for further proceedings.

**SO ORDERED.**

February 7, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE